AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) |
|---|---|
| v. | ) |
| Louis Bonner, Jr. | ) Case No. 3:19-mj-101 |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 19, 2019__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 and 841(a)(1) and (b)(1)(B) | Conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. |
| 18 U.S.C. 922(g)(1) and 924(a)(2) | Felon in possession of a firearm. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jason E. Rhodes, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __phone__ *(specify reliable electronic means)*.

Date: **Via electronic means.**
      **4:17 PM, Feb 21, 2019**

_____
Michael J. Newman
United States Magistrate Judge

City and state: Dayton, Ohio

**Sworn to via telephone after submission by reliable electronic means. See FRCP 4.1, 41(d)(3).**

## AFFIDAVIT

Jason E. Rhodes, a Task Force Officer for the Federal Bureau of Investigation ("FBI") and City of Dayton Police Department officer being duly sworn, deposes as follows:

## INTRODUCTION

a. I am a Task Force Officer ("TFO") with the United States Federal Bureau of Investigation ("FBI") within the meaning of Title 21, United Stated Code ("U.S.C."), Section 878, that is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses as detailed in 21 U.S.C. § 878.

b. I have been employed in law enforcement since 2007. I currently serve as an officer with the Dayton Police Department ("DPD"). Since June 2016, I have been assigned to the Community Initiative to Reduce Gun Violence "CIRGV" Task Force, and in November 2017, I became a TFO with the FBI Safe Streets Task Force. Since 2013, I have been dedicated to the investigation of narcotics, firearms and gang offenses. I have been involved in firearm-related arrests, executed search warrants that resulted in the seizure of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.

c. This affidavit is made in support of an application for a federal arrest warrant and complaint against **Louis Bonner Jr.** ("**BONNER**") for the following offenses:

   a) Conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B).

   b) Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

4. The facts in this affidavit are submitted for the purpose of establishing probable cause, and do not include every fact known in the investigation.

## FACTS

5. On February 19, 2019 at about 6:15 pm, I, Detective Jason Rhodes, was working in the city of Dayton driving an unmarked vehicle and wearing plain clothes. I observed a black male, come from the area of the front door of 29 North Upland Avenue, Dayton, Ohio 45417, and get into the front passenger seat of a car parked directly across the street on the east curb facing to the north. The female driver failed to signal while pulling from the curb. Officer Mark Orick and Officer Ross Nagy attempted a traffic stop on the car on Calhoun Street at North Halloway Street. The car fled the traffic stop and ultimately crashed at North Plaza Avenue and West Third Street. Eight (8) grams of suspected marijuana and eight (8)

1

grams of suspected methamphetamine were recovered from the driver seat where the female driver was sitting.

6. Officer Orick read the two individuals (female driver and male occupant) their constitutional rights warnings separately at the hospital and both said they understood and would speak with him. The female driver said she drove the male occupant to the house on North Upland so she could buy $75 worth of methamphetamine. The male occupant said he has smoked meth with the female driver several times, but he was going to the house on Upland to buy marijuana for them. The male occupant did not know the exact address of the house he went into, but said it had the white car in the driveway. Based on my observations, I know that 29 North Upland had a white Dodge Charger in the driveway at the time I observed the male occupant exit the address. The male occupant said the guy that lives there sells marijuana.

7. I am personally familiar with 29 North Upland Avenue because Detective Dustin Phillips and I made a drug arrest from there in September 2017, during which Jaquan White was arrested coming from that house and making a drug deal. We also had numerous drug complaints on that location at the time and attempted to make contact with the resident. **BONNER** answered the interior door on that date, but not the exterior door. He did not want to speak with us and we left.

8. Given the incident earlier in the evening and my personal knowledge of 29 North Upland, I decided to do surveillance to observe any further drug activity. At about 7:05 pm, I observed four black males exit the front entrance door and get into a white Dodge Charger in the driveway. I contacted Sergeant Halburnt and Officer Michael Beane who were driving marked vehicles and who had been stationed in the area. Sergeant Halburnt then pulled in behind the Charger, blocking its exit from the driveway, and initiated his overhead lights. Officer Beane was directly behind Sergeant Halburnt in a separate marked cruiser. Dashawn Works immediately fled on foot from the front passenger seat of the Charger. He was later apprehended by Officer Beane and me. Officer Beane witnessed Works throw down a clear plastic bag while fleeing on foot. Officer Beane recovered the bag, which contained about 5.4 grams of suspected fentanyl. **BONNER** was in the driver seat of the Charger. Ja'ven House and Marvell Conner were in the backseat. Due to Works fleeing from the Charger and having felony drugs, the Charger was ultimately going to be towed. An inventory search prior to tow was completed per Dayton Police Department policy. Officers located a pill bottle in the name of House in the backseat with approximately 7.75 grams of suspected fentanyl.

9. Based on the drug activity stemming from 29 North Upland Avenue on that day along with my previous knowledge, I drafted a search warrant for the residence. The search warrant was signed by Dayton Municipal Court Judge Logan on February 19, 2019 at 10:14 pm. A search of the residence was completed and numerous items of evidence were recovered. Approximately 175 grams of methamphetamine was recovered in two separate bags, which were located over the stove in the kitchen in a cutout in the ceiling for a light fixture. There was also a .45 caliber Desert Eagle handgun, serial number 20312276, in the same area that was unloaded, along with a box of ammunition. There was a total of approximately 3,452 grams of marijuana found in various spots throughout the house. There was a digital scale

          with residue on the kitchen counter. A Smith and Wesson 9 mm handgun, serial number LEM7692, was recovered from inside a kitchen cabinet. It was loaded with five live rounds, including one in the chamber. It was found to have been reported as stolen out of Springfield, Ohio. A bullet proof vest was recovered from the second floor storage room of the house. There was a Spectrum bill and a City of Dayton bill both in the name of **BONNER** addressed to 29 North Upland Avenue. In addition to the items recovered, there was a large photo on the main living room wall with **BONNER** and his family on it. Also in addition to the possessory items we located for **BONNER**, **BONNER** has had numerous interactions with the police over the last few years in which he has listed 29 North Upland Avenue as his home address.

10. Sergeant Halburnt read **BONNER** his constitutional rights warnings, which he understood. **BONNER** agreed to speak with law enforcement. **BONNER** told me that it was his house. He did not own the house or have a formal lease agreement, but had a "gentleman's agreement" with the homeowner to rent the house. He said that he and his ten year-old son are the only two people that routinely sleep at the house. He told me he was not selling drugs, but allows his friends to come into the house. He acknowledged he knew what they were doing was wrong, but he said he was in a bind and they were helping him out. He denied any knowledge of any guns inside the house.

11. A check of **BONNER**'s criminal history revealed a conviction from March 16, 2004, in the Common Pleas Court of Montgomery County Ohio for possession of cocaine, a felony of the fourth degree.

//

//

//

//

//

//

//

3

14. Based on the above information, I believe that probable cause exists to conclude that on or about August 23, 2018, while in the Southern District of Ohio, **BONNER** did commit the following offenses:

    a. Conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B).

    b. Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

_____
Jason E. Rhodes, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this 21st day of February, 2019.

_____
Michael J. Newman
United States Magistrate Judge